The Honorable Tim Wooldridge State Senator Post Office Box 339 Paragould, AR 72451
Dear Senator Wooldridge:
I am writing in response to your request for my opinion on two questions arising from the following reported facts:
 The Arkansas Highway Department, when constructing the Highway 63 bypass south of Hoxie, contracted the design including drainage structures. The drainage structure provided for approximately 600 acres of Southwest Hoxie increased the 100 year flood height in the bypass area by approximately 2 feet according to a hydrology study by the State Highway Department hydrology engineer. The study does not include approximately 10% of the land draining into this system and the outlet is restricted by a tile which is under size. Applying the process used by the state, the actual 100 year flood height increase will be nearly 3 feet and the Standard Project Flood will increase in height by nearly 4 feet.
 The Village Creek Drainage Commission has proposed enlarging a ditch and inserting a tile under the now highway 63B to correct a drainage problem existing since the construction of 63B in the late 50's adding an unknown amount of water to an already overloaded system (the ditch size and tile size is undefined). The area North of highway 63B includes 2 large businesses and the Hoxie School. All lands are included in the Village Creek Drainage District as well as the outlet for this drainage system.
As I interpret these rather complicated facts, the above recitation relates to two distinct problems: (1) an increase in projected flood levels arising from a Highway Department Highway 63-bypass project in southwest Hoxie; and (2) an increase in system overload that might result from the Village Creek Drainage Commission's proposed enlargement of a ditch and placement of a tile under Highway 63.
These circumstances have prompted you to pose the following questions:
 1. Does the Village Creek Drainage Commission have representative responsibility to those people who live and work near the Highway 63 bypass (south of Hoxie) in requiring the Arkansas Highway Department to add drainage structure or verifying that a flooding situation exists?
 2. Can the Drainage District and the Highway Department, together or individually, legally take land or an easement on land to use to drain one section of land without first proving beyond a doubt that it will not cause flooding or damage to another area?
RESPONSE
In my opinion, the answer to your first question is "yes." I will note, however, that I question the assumption that a drainage district commission has the authority to direct the Arkansas Highway Department to make any kind of improvement. A.C.A. §§ 14-121-402 and -403. I believe the answer to your second question is likewise "yes." A.C.A. §§ 14-121-402 and27-67-311.
Question 1: Does the Village Creek Drainage Commission haverepresentative responsibility to those people who live and work near theHighway 63 bypass (south of Hoxie) in requiring the Arkansas HighwayDepartment to add drainage structure or verifying that a floodingsituation exists?
I should note initially that I question your underlying suggestion that the Village Creek Drainage Commission (the "Drainage Commission") is authorized to require the Highway Department to make improvements. With respect to the substance of your question, I believe the Drainage Commission is responsible to any person or entity adversely affected by its activities.
The Village Creek Drainage District was formed in Lawrence County by special act pursuant to Acts 1920, No. 40 (Extr. Sess.), subject to the provisions generally applicable to drainage districts set forth in Acts 1909, No. 279. See generally discussions of the Village Creek Drainage District's formation in Reynolds v. Haulcroft, 209 Ark. 266, 269,189 S.W.2d 930 (1945); Sloan v. Village Creek Drainage District,171 Ark. 1088, 1088, 287 S.W. 380 (1926); and Village Creek DrainageDistrict of Lawrence County v. Ivie, 168 Ark. 523,524, 271 S.W. 4 (1925).Act 279 of 1909 is currently codified at A.C.A. § 14-121-101 et seq.
(Repl. 1998 Supp. 2003).
With respect to any proposal by a drainage district to alleviate flooding by a drainage project involving a highway, A.C.A. § 14-120-219 provides:
 If the construction of the flood control and drainage works contemplated under any project is to be constructed upon, over, and across any highways of this state, the State Highway Commission is authorized, empowered, and directed to make and execute any and all contracts, easements, or other instruments in writing with the board of directors of any such district, the United States, the Secretary of the Army, Chief of Engineers of the United States Army, or any other federal agency for rights-of-way for levees, levee foundations, channel rectifications, reservoirs, reservoir sites, drainage canals, and flowage and storage rights thereon, in conformity with any act of Congress applicable.[1]
This statute provides that on any project undertaken cooperatively with the federal government that would require construction "upon, over, and across any highways of this state," the Highway Commission will provide any legal instrument necessary to enable the construction to proceed. More generally, with respect to any drainage district project, A.C.A. §14-121-805(a) further affords drainage district commissioners "the right to carry the ditches across any highway."
Specifically with respect to your request, I harbor some doubts about your apparent assumption that the Drainage Commission has the authority to "requir[e] the Highway Department to add drainage structure." Even assuming the Drainage Commission had not ceded supervisory control over a project to the federal government, as the statutes referenced would authorize it to do, the Drainage Commission's authority over the Highway Department pursuant to the above statutes would be limited to obtaining any easement required to complete the project. Neither of the above recited statutes authorizes the Drainage Commission to demand that the Highway Department itself complete a project, although the Highway Department might determine, based upon a review of the facts, that it should participate in the project in pursuit of its own duties.
With respect to your inquiry as to whether the Drainage Commission has "representative responsibility to those people near the bypass," if the referenced property "near the bypass" lies within the drainage district,[2] I believe the Drainage Commission would clearly have "representative responsibility" over the construction and maintenance of drainage improvements affecting "people near the bypass." See A.C.A. §14-121-201 (defining such construction and maintenance as the very purpose of a drainage district); A.C.A. §§ 14-121-305 and -308 (charging a drainage commission with the duty to construct and to maintain an adequate drainage system within the district); Acts 1920, No. 40, § 3 ("It is hereby made the duty of the Commissioners of said district to construct such drainage ditches and other drainage works as will reclaim the lands within said district from surface water so far as practicable.").[3]
However, the Drainage Commission's "representative responsibility" is not to any subsection of the district, but rather to the district as a whole. As set forth at A.C.A. § 14-121-402, any drainage commission is charged with the duty to assess relative benefits and damages within its district and then to levy assessments or provide compensation for damages as circumstances warrant. Section 14-121-403 sets forth the procedure for first making such assessments for affected property located outside the district in question and then bringing such property into the district.
Question 2: Can the Drainage District and the Highway Department,together or individually, legally take land or an easement on land to useto drain one section of land without first proving beyond a doubt that itwill not cause flooding or damage to another area?
In my opinion, the answer to this question is "yes"; in exercising the power of eminent domain, neither a drainage district nor the Highway Department would be obliged to "prov[e] beyond a doubt" that any discretionary decision regarding construction or maintenance of a drainage system would not possibly cause inadvertent damage to a portion of the district.
With regard to the question of when a drainage district may exercise the power of eminent domain, A.C.A. § 14-121-809 provides:
 (a) All drainage districts organized under special acts of the General Assembly are given authority to construct, reconstruct, repair, and replace levees and to construct setbacks abutting drainage ditches whenever deemed necessary and proper by the board of directors of the district for the benefit of the lands of the district in securing better drainage for those lands and preventing overflows and destruction of the crops and the erosion of lands within the district. They are given the power of eminent domain over such lands as may be necessary for the purpose.
 (b) The drainage districts shall have a further right and authority to obligate the district to maintain and keep in proper repair any levees which may be constructed, reconstructed, repaired, or replaced within the district by the federal government for the benefit of the lands within the district and to further obligate the district to keep its drainage ditches and their outlets free of obstructions.
(Emphasis added.)
With respect to the Highway Department's power of eminent domain, A.C.A. § 27-67-301 (Repl. 1994) provides:
 (a) The State Highway Commission is authorized to acquire real or personal property, or any interest therein, deemed to be necessary or desirable for state highway purposes, by gift, devise, purchase, exchange, condemnation, or otherwise.
 (b) These lands or real property may be acquired in fee simple or in any lesser estate.
(Emphasis added.) Among the statutorily authorized "state highway purposes" are "drainage in connection with any state highway, or . . . cuts and fills, or channel changes or maintenance thereof[.]" A.C.A. §27-67-302(7) (Repl. 1994).
As the highlighted passages in these statutes suggest, the legislature has authorized drainage districts and the Highway Department by eminent domain to condemn whatever property they deem to be necessary to fulfill their respective obligations. Nothing in these statutes or any applicable case law suggests that the condemning authority must prove beyond any doubt that the condemnation will not adversely affect some property. Indeed, as noted in my response to your previous question, the Code expressly anticipates that a project that involves a condemnation may result in damages to certain properties and provides for an assessment of and monetary reimbursement for those damages. See A.C.A. § 14-121-402
(providing for an assessment of benefits and damages within drainage district) and A.C.A. § 27-67-311 (providing for a judicial determination of compensation due in the event of a taking by the Highway Commission).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The reference to federal law acknowledges the fact that districts formed under Acts 1909, No. 279 are authorized "to construct drainage or drainage and levee improvements in conjunction with the federal government." A.C.A. § 14-121-201(a)(1). See also A.C.A. § 14-121-307
(authorizing a district, pursuant to Act 279, to cede control and supervision of projects to the federal government); A.C.A. § 14-121-801
(authorizing a district to cooperate with the United States in performing work in a drainage district and setting forth the permissible terms of that cooperation); A.C.A. § 14-120-204 (providing that subchapter 2 of chapter 120 of title 14, which deals exclusively with agreements between districts and the United States, provides an alternative to the provisions of A.C.A. § 14-121-801 and should be seen as cumulative thereto); A.C.A. § 14-120-216 (authorizing a district to contract with the United States Army Corps of Engineers or any other federal agency for the construction of improvements under specified conditions); and A.C.A. § 14-120-217 (authorizing a district to condemn property deemed necessary for improvements by the Chief Engineer of the United States Army).
[2] It is not entirely clear whether or not the affected property indeed lies within the drainage district. Although you report in your factual recitation that "[a]ll lands are included in the Village Creek Drainage District as well as the outlet for this drainage system," you offer this information in a paragraph devoted exclusively to the apparently distinct Highway 63B drainage problem.
[3] This reference to Act 40 of 1920, which established the Village Creek Drainage District, is appropriate because drainage districts created by special act are governed both by Act 279 of 1909 and by the special acts that created them. A.C.A. § 14-121-208.